IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

HAROLD MOODY,

Plaintiff,

v.                                    Civil Action No.
                                      9:03-CV-0850 (NAM/DEP)

MOON, *et al.*,

Defendants.

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

HAROLD MOODY, *Pro Se*

FOR DEFENDANTS:

HON. ELIOT SPITZER                    PATRICK F. MacRAE, ESQ.
Office of the Attorney General        Assistant Attorney General
State of New York
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204-2455

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

Plaintiff Harold Moody, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this action

pursuant to 42 U.S.C. § 1983 alleging deprivation of his constitutional rights.  In his complaint, as amended, plaintiff alleges that the defendants were deliberately indifferent to his serious medical needs by their failure to properly and promptly treat him for a knee injury, in violation of the Eighth Amendment to the United States Constitution.[1]  As relief, plaintiff seeks recovery of $10 million in compensatory and punitive damages.

Currently pending before the court is a motion by the defendants seeking the entry of summary judgment dismissing plaintiff's complaint.  In their motion, defendants assert that plaintiff's claims are procedurally barred as a result of his failure to properly exhaust available administrative remedies before commencing suit, and additionally argue that, as a matter of law, they were not subjectively indifferent to his medical needs.  Based upon a thorough review of the record now before the court, I find the existence of genuine, triable questions of material fact as to both issues raised in defendants' motion, and therefore recommend that it be denied

---

[1]      Plaintiff's amended complaint also purports to assert a claim for deprivation of his rights under the First Amendment, although the basis for that claim is unclear.  Generously construed, plaintiff's complaint could be regarded as asserting a First Amendment retaliation claim against defendant Janicki.  *See* Amended Complaint (Dkt. No. 40) First Cause of Action.  As defendants have not sought dismissal of that claim or otherwise addressed it in their motion, I make no recommendation regarding the potential First Amendment cause of action.

except as to the portion of plaintiff's deliberate indifference claim which is based upon defendants' alleged delay in treating his knee condition, and plaintiff's entire Eighth Amendment claim as against defendants Moon and Behrle.

I.   BACKGROUND

With relatively few exceptions, the salient facts underlying plaintiff's claims are not controversial.[2]  At the times relevant to his claims, plaintiff was a New York State prison inmate entrusted to the custody of the New York State Department of Correctional Services ("DOCS"), and housed within the Oneida Correctional Facility ("Oneida").  *See generally* Amended Complaint (Dkt No. 40).  On or about December 20, 2002, while assigned to the H-Block housing unit at that facility, plaintiff suffered a knee injury.[3]  Amended Complaint (Dkt. No. 40) ¶ 1.  Following the

_____

[2]      In light of the procedural posture of the case, the following recitation is gleaned from the record, with all inferences drawn and ambiguities resolved in plaintiff's favor.  *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005); *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  To the extent that there is any significant controversy over facts material to the issues raised in defendants' motion, they will be noted.

[3]      The record before the court is equivocal as to the exact date of plaintiff's injury.  Plaintiff's amended complaint asserts that his knee injury occurred on December 20, 2002.  *See* Amended Complaint (Dkt. No. 40) ¶ 1.  It appears from plaintiff's motion papers and review of the pertinent records, however, that the injury may actually have occurred one day later, on December 21, 2002.  *See, e.g.*, Moody Decl. (Dkt. No. 41) ¶ 8; Defendants' Motion (Dkt. No. 37) Exh. B, at 1 & Exh. H, at 1; *but see* Defendants' Motion (Dkt. No. 37) Exh. G, at 1 (indicating December 20, 2002

accident, plaintiff was transported by van to emergency sick call where he was examined, provided an Ace wrap and pain medication, and instructed to register for sick call on December 23, 2002.  Moody Aff. (Dkt. No. 41) ¶ 8; Amended Complaint (Dkt. No. 40) ¶ 1; Defendants' Motion (Dkt. No. 37) Exh. B, at 1.

Plaintiff attended sick call, as directed, on December 23, 2002, and on that occasion was examined by a member of the facility's medical staff, continuing to complain of "[right] knee discomfort."  Defendants' Motion (Dkt. No. 37) Exh. B, at 1; *see also* Amended Complaint (Dkt. No. 40) ¶ 2. Following that examination plaintiff was given a work excuse for the day; told to rest, elevate his leg, and administer ice to his knee; and advised to use Motrin and analgesic balm for his pain.  Amended Complaint (Dkt. No. 40) ¶ 1; Defendants' Motion (Dkt. No. 37) Exh. B, at 1.

Plaintiff was again seen by facility medical staff members on January 2, 2003, continuing to complain of right knee pain.  Amended Complaint (Dkt. No. 40) ¶ 3.  During that examination plaintiff was provided with an elastic knee support and scheduled for a visit with the facility's nurse practitioner on January 14, 2003, and was advised to continue use of

---

as the date of injury).  This discrepancy is not significant for purposes of addressing plaintiff's claims and defendants' pending motion.

Motrin and analgesic balm in the interim.  Defendants' Motion (Dkt. No. 37) Exh. B, at 1.

Plaintiff alleges, and defendants acknowledge, that on January 14, 2003 plaintiff was seen by defendant Janicki, a nurse practitioner at the facility, and defendant Pickles, a physician employed by the DOCS at Oneida.  Amended Complaint (Dkt. No. 40) ¶¶ 5-6; Defendants' Motion (Dkt. No. 37) Exh. B, at 2.  The parties' version of the events surrounding that visit, however, are divergent.  Plaintiff maintains that on that date Dr. Pickles ordered Nurse Practitioner Janicki to remove him from his housing unit and relocate him to the prison infirmary, order magnetic resonance imaging ("MRI") testing, and keep plaintiff off of his affected right leg until it could be determined whether, and if so to what extent, any residual damage existed, but that defendant Janicki ignored those directives and instead merely provided him with a cane and pain medication and ordered him returned to his assigned dormitory.  Moody Aff. (Dkt. No. 41) ¶¶ 6-12; Amended Complaint (Dkt. No. 40) ¶ 7.  The record submitted by the defendants, however – which contains a notation from that date completed by defendant Janicki but no entry from Dr. Pickles – does not support this version of the relevant events.  *See* Defendants' Motion (Dkt.

5

No. 37) Exh. B, at 2.

Plaintiff contends that a week later, on January 21, 2003, he returned

to the facility hospital for a follow-up appointment with Nurse Practitioner

Janicki and Dr. Pickles, and that following that examination Dr. Pickles

reissued the order previously given a week earlier.  Amended Complaint

(Dkt. No. 40) ¶ 8.  Plaintiff asserts that despite those directives, Nurse

Practitioner Janicki informed Moody that he would have to continue using

a cane and would not be admitted to the prison infirmary.[4]  Amended

Complaint (Dkt. No. 40) ¶¶ 9-11.

A referral was issued by defendant Janicki on February 4, 2003,

scheduling the plaintiff for MRI testing of his knee on February 24, 2003.

Defendants' Motion (Dkt. No. 37) Exh. C, at 1; *see also id.* Exh. B, at 5.

The results of that testing reflected that plaintiff suffered from

> 1.  MEDIAL MENISCAL TEAR INVOLVING
>      BODY/POSTERIOR HORN.

---

[4]      Defendants make no reference in their motion to a visit by plaintiff to the
prison infirmary on that date, nor was any AHR entry from that date included by the
defendants with their papers.  *See* Defendants' Motion (Dkt. No. 37) Exh. B.  The AHR
notation pertaining to the January 14, 2003 visit, however, suggests the scheduling of
an appointment on January 21, 2003.  *Id.*, at 2.  Moreover, in a response to
interrogatories served by the plaintiff, defendants have acknowledged that plaintiff was
seen by defendant Janicki on January 21, 2003, as confirmed in the Oneida clinic log
book.  *See* Moody Decl. (Dkt. No. 41) ¶ 15.

2.      BONE CONTUSION MEDIAL TIBIAL PLATEAU.

3.      JOINT EFFUSION.

4.      MEDICAL POPLITEAL CYST.

5.      PROBABLE INTRAMUSCULAR GANGLION WITHIN
        THE POPLITEUS MUSCLE[.]

Defendants' Motion (Dkt. No. 37) Exh. D (typeset as in original).  Based

upon the results of that MRI, plaintiff was scheduled by defendant Janicki

for an orthopedic consultation.  *Id.* Exh. C, at 2.

Plaintiff was seen by an orthopedist on April 16, 2003.  *Id.*  Up until

the time of that appointment, according to his AHR, plaintiff continued to

visit facility medical staff complaining of ongoing knee pain.[5]  Defendants'

Motion (Dkt. No. 37) Exh. B, at 5-8.  Upon examination and review of

plaintiff's records the orthopedist diagnosed plaintiff as suffering from a

"tear med[ial] meniscal right knee" and recommended "ground level until

after surgery".  *Id.* Exh. C, at 2*.*  Plaintiff later underwent

arthroscopy/partial medial meniscectomy surgery on May 27, 2003.  *Id.*

Exh. F.

Following his surgery, plaintiff was provided with crutches and a

_____

[5]      It was not until March 28, 2003, after persistent complaints of knee pain,
that plaintiff was admitted into the prison infirmary.

7

regimen of physical therapy.  Defendants' Motion (Dkt. No. 37) Exh. B, at

16-17.  According to plaintiff's medical records, by July of 2003 his knee

was progressing well, with some sporadic indication of recurring

discomfort, particularly on July 21, 2003, when plaintiff reported suffering

from pain while playing basketball.  *E.g.*, *id.* Exh. C, at 19, 21, 24.

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on July 9, 2003 and, following routine

review of his complaint and *in forma pauperis* application by the court,

was directed to file an amended complaint more clearly detailing his

claims.  Dkt. Nos. 1, 4.  Plaintiff subsequently submitted an amended

complaint, which was approved by the court for filing on July 24, 2003,

Dkt. No. 5, and, after having been granted leave, later submitted a second

amended complaint which was filed on June 3, 2005, and remains the

operative pleading defining plaintiff's claims in the action.  Dkt. No. 40.

Named as defendants in plaintiff's most recent amended complaint are Dr.

Pickles; Nurse Practicner Janicki; P. D. Behrle, Deputy Superintendent for

Administration at Oneida; and Ms. (f/n/u) Moon, a Nurse Administrator at

the facility.

On April 13, 2005, defendants moved seeking the entry of summary

judgment dismissing plaintiff's complaint.  Dkt. No. 37.  In their motion,

defendants argue that plaintiff's claims are barred by virtue of his failure to

exhaust available administrative remedies, as required under 42 U.S.C. §

1997e(a), and additionally contend that as a matter of law the record fails

to disclose any deliberate indifference on defendants' part to his serious

medical needs.  Defendants' motion, which plaintiff has opposed, *see* Dkt.

No. 41, is now ripe for determination and has been referred to me for the

issuance of a report and recommendation pursuant to 28 U.S.C. §

636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See*

*also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

    A.   Summary Judgment Standard

    Summary judgment is governed by Rule 56 of the Federal Rules of

Civil Procedure.  Under that provision, summary judgment is warranted

when "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits . . . show that there is no

genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986);

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505,

2509-10 (1986); *Security Insurance Co. of Hartford v. Old Dominion*

*Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material",

for purposes of this inquiry, if "it might affect the outcome of the suit under

governing law."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also*

*Jeffreys*, 426 F.3d at 553 (citing *Anderson*).  A material fact is genuinely in

dispute "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at

2510.  Though *pro se* plaintiffs are entitled to special latitude when

defending against summary judgment motions, they must establish more

than merely "metaphysical doubt as to the material facts."  *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct.

1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-

21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se*

plaintiff understood nature of summary judgment process).

When summary judgment is sought, the moving party bears an initial

burden of demonstrating that there is no genuine dispute of material fact

to be decided with respect to any essential element of the claim in issue;

the failure to meet this burden warrants denial of the motion.  *Anderson*,

477 U.S. at 250 n.4, 106 S. Ct. at 2511 n. 4; *Security Insurance*, 391 F.3d

at 83.  In the event this initial burden is met, the opposing party must

show, through affidavits or otherwise, that there is a material issue of fact

for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at

2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any

ambiguities, and draw all inferences from the facts, in a light most

favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright*, 132

F.3d at 137-38.  Summary judgment is inappropriate where "review of the

record reveals sufficient evidence for a rational trier of fact to find in the

[non-movant's] favor."  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d

Cir. 2002) (citation omitted); *see also Anderson*, 477 U.S. at 250, 106 S.

Ct. at 2511 (summary judgment is appropriate only when "there can be

but one reasonable conclusion as to the verdict.").

B.    Failure to Exhaust Administrative Remedies

In their motion defendants argue that plaintiff is effectively precluded

from pursuing his claims in this case on the procedural basis of his failure

to fulfill the requirement that he exhaust available administrative remedies

before commencing the action.  In response, plaintiff asserts that he has

11

fully complied with the applicable exhaustion requirements.

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), altered the inmate litigation landscape considerably, imposing several restrictions on the ability of prisoners to maintain federal civil rights actions.  One such restriction introduced by the PLRA requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The Supreme Court has held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 992 (2002).

New York prison inmates are subject to an Inmate Grievance Program established by the DOCS, and recognized as an "available" remedy for purposes of the PLRA.  *See Mingues v. Nelson*, No. 96 CV 5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson*, 351 F.3d 606 (2003) and *Snider v. Melindez*, 199 F.3d 108,

112-13 (2d Cir.1999)).  The New York Inmate Grievance Program consists

of a three-step review process.  First, a written grievance is submitted to

the Inmate Grievance Review Committee ("IGRC") within fourteen days of

the incident.[6]  7 N.Y.C.R.R. § 701.7(a).  The IGRC, which is comprised of

inmates and facility employees, then issues a determination regarding the

grievance.  7 N.Y.C.R.R. § 701.7(a).  If an appeal is filed, the

superintendent of the facility next reviews the IGRC's determination and

issues a decision.  *Id.* § 701.7(b).  The third level of the process affords

the inmate the right to appeal the superintendent's ruling to the Central

Office Review Committee ("CORC"), which makes the final administrative

decision.  *Id.* § 701.7(c).  Only upon exhaustion of these three levels of

review may a prisoner seek relief pursuant to section 1983 in federal

court.  *Reyes v. Punzal*, 206 F. Supp. 2d 431, 432 (W.D.N.Y. 2002)

(citing, *inter alia*, *Sulton v. Greiner*, No. 00 Civ. 0727, 2000 WL 1809284,

at *3 (S.D.N.Y. Dec. 11, 2000)).

In support of their motion defendants have offered an affidavit of

Carol L. Doyle, an Inmates Record Coordinator II for the DOCS assigned

---

[6]     The Inmate Grievance Program supervisor may waive the timeliness of
the grievance submission due to "mitigating circumstances."  7 N.Y.C.R.R. §
701.7(a)(1).

to the Marcy Correctional Facility, in which she states that a search of available records has failed to yield evidence of any grievances filed by the plaintiff, or letters sent to the named defendants, related to the issues raised in his complaint. *See* Doyle Aff. (Dkt. No. 37) ¶¶ 2-4. Plaintiff has since countered with a sworn declaration indicating his submission of two grievances and the sending of "numerous letters to defendants", involving the issues now raised. Moody Decl. (Dkt. No. 41) ¶ 5. Plaintiff's claim that his obligation to exhaust internal remedies was fulfilled is buttressed by copies of records associated with inmate grievances no. ONI-8388-03 and ONI-8416-03, both addressing the matters raised in plaintiff's complaint in this action, and both of which appear to have been fully pursued through to the CORC. Plaintiff has also submitted letters sent by him to defendants Behrle and Moon, addressing the issues raised in his complaint, as well as certain responses to those letters. *See* Moody Decl. (Dkt. No. 41) Exhs. 1 & 2.

Plaintiff's sworn statements regarding his efforts to make prison officials aware of his concerns, coupled with the submission of supporting documentation, are strongly suggestive of his compliance with the PLRA's exhaustion requirement, and at a minimum raise triable issues of fact

surrounding exhaustion, thereby precluding the entry of summary

judgment dismissing plaintiff's complaint on this procedural basis.

    C.    <u>Deliberate Indifference</u>

_____In their motion, defendants also challenge the merits of plaintiff's

deliberate indifference claim.  Accepting, for purposes of their motion, that

plaintiff can establish the existence of a serious medical need, defendants

nonetheless argue that as a matter of law their conduct does not support

plaintiff's claim of their deliberate indifference to that serious medical

need.

    The Eighth Amendment's prohibition of cruel and unusual punishment

encompasses punishments that involve the "unnecessary and wanton

infliction of pain" and are "incompatible with the evolving standards of

decency that mark the progress of a maturing society."[7] *Estelle v.*

*Gamble*, 429 U.S. 97, 102-03, 97 S.Ct. 285, 290 (1976) (citations and

internal quotations omitted); *see also Whitley v. Albers*, 475 U.S. 312,

319, 106 S. Ct. 1078, 1084 (1986) (citing, *inter alia*, *Estelle*).

    The Eighth Amendment "'does not mandate comfortable prisons'", but

---

[7]    That amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.

does not tolerate inhumane ones either; thus the conditions of an inmate's confinement, including medical care, are subject to Eighth Amendment scrutiny. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981)). To succeed on a claim alleging that prison conditions, including but not limited to medical care, violate the Eighth Amendment, a plaintiff must satisfy both an objective and a subjective requirement – the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference". *Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977 (citations and internal quotations omitted); *see also Leach v. Dufrain*, 103 F. Supp.2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991)); *Waldo v. Goord*, No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.) (also citing, *inter alia*, *Wilson)*.

In order to state a medical indifference claim under the Eighth Amendment, a plaintiff must allege a deprivation involving a medical need which is, in objective terms, "'sufficiently serious'". *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citing *Wilson*, 501 U.S. at 298, 111 S. Ct. at

2324), *cert. denied sub nom.*, *Foote v. Hathaway*, 513 U.S. 1154, 115 S.

Ct. 1108 (1995).  A medical need is serious for constitutional purposes if it

presents "'a condition of urgency' that may result in 'degeneration' or

'extreme pain'."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)

(citations omitted).  A serious medical need can also exist where "'failure

to treat a prisoner's condition could result in further significant injury or the

unnecessary and wanton infliction of pain'" – since medical conditions

vary in severity, a decision to leave a condition untreated may or may not

be unconstitutional, depending on the facts*.  Harrison v. Barkley*, 219 F.3d

132, 136-37 (2d Cir. 2000) (quoting, *inter alia*, *Chance*).  Relevant factors

in making this determination include injury that a "'reasonable doctor or

patient would find important and worthy of comment or treatment'", a

condition that "'significantly affects'" a prisoner's daily activities, or

"'chronic and substantial pain.'"  *Chance*, 43 F.3d at 701 (citation omitted).

Deliberate indifference, in a constitutional sense, exists if an official

knows of and disregards an excessive risk to inmate health or safety; the

official must "both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also

draw the inference."  *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979; *Leach*,

17

103 F. Supp.2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at *2 (same).

It is well established that mere disagreement with a prescribed course of treatment, or even a claim that negligence or medical malpractice has occurred, does not provide a basis to find a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105-06, 97 S. Ct. at 201-02; *Chance*, 143 F.3d at 703; *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir.), *cert. denied*, 506 U.S. 1040, 113 S. Ct. 828 (1992). Diagnostic techniques and treatments are a "classic example of a matter for medical judgment", and medical staff is vested with broad discretion to determine what method of diagnosis and/or treatment to provide its patients. *Estelle*, 429 U.S. at 107, 97 S. Ct. at 293; *Chance*, 143 F.3d at 703; *Rosales v. Coughlin*, 10 F. Supp.2d 261, 264 (W.D.N.Y. 1998).

Plaintiff's claim regarding defendants' indifference to his condition, appears to be two pronged.  First, Moody complains of the delay in ordering an MRI of his knee, and providing for surgical intervention. Plaintiff also maintains that defendant Janicki's actions, in allegedly contravening Dr. Pickles' orders that he be admitted into the prison infirmary, led him to re-injure his knee on February 22, 2003 when he

slipped while attempting to perform a prison work assignment in the facility mess hall.  *See* Moody Decl. (Dkt. No. 41) ¶ 20.  Plaintiff argues that had Dr. Pickles' instructions to defendant Janicki been carried out, this aggravation of his knee injury would not have occurred.

A delay in providing an inmate with treatment of a serious medical condition can give rise to a finding of an Eighth Amendment violation when the condition ignored is "life-threatening and fast-degenerating", or where treatment is withheld over a lengthy period of time while the plaintiff complains of extreme pain.  *Sully-Martinez v. Glover*, No. 00 CIV. 5997, 2001 WL 1491278, at *5 (S.D.N.Y. Nov. 26, 2001) (citing *Hathaway*, 841 F.2d 48 and *Archer v. Dutcher*, 733 F.2d 14 (2d Cir. 1984)).  In this case, however, no such life threatening or fast deteriorating condition is presented, nor was plaintiff's condition ignored by prison officials altogether.  Instead, the record reflects that prison officials at Oneida continued to see the plaintiff on a regular basis during the relevant time period, deciding to follow a more conservative course of treatment before ordering an MRI and authorizing knee surgery, with only a five month interval between plaintiff's injury and the operation.  Based upon these circumstances, no reasonable factfinder could conclude that defendants

were deliberately indifferent to plaintiff's medical needs.  *See*, *e.g.*, *Taylor v. Kurtz*, No. 00-CV-700, 2004 WL 2414847, at \*4 (W.D.N.Y. Oct. 28, 2004); *Espinal v. Coughlin*, No. 98 CIV. 2579, 2002 WL 10450, at \*3-\*5 (S.D.N.Y. Jan. 3, 2002); *Culp v. Koenigsmann*, No. 99 Civ. 9557, 2000 WL 995495, at \*9 (S.D.N.Y. July 19, 2000).

Plaintiff's allegations regarding Nurse Practitioner Janicki's failure to follow Dr. Pickles' instructions are more troublesome.  Plaintiff alleges, in essence, that her failure to implement Dr. Pickles' directives led to additional damage to his knee.  These allegations present genuine, triable issues of material fact which preclude the court from finding as a matter of law that defendant Janicki's actions did not constitute deliberate indifference to plaintiff's serious medical condition.  *See*, *e.g.*, *Scott v. Goord*, No. 01Civ.0847, 2004 WL 2403853, at \*11 (S.D.N.Y. Oct. 27, 2004).

In sum, the record reflects the existence of genuine, material issues of disputed fact which preclude the entry of summary judgment dismissing on the merits the portion of plaintiff's Eighth Amendment deliberate indifference claim implicated by defendant Janicki's alleged refusal to follow instructions from Dr. Pickles.  The balance of that claim, however,

which is premised upon the delay in providing treatment for plaintiff's

injury, is subject to dismissal as a matter of law.

### D.   Personal Involvement

In their motion, defendants indirectly challenge the sufficiency of

plaintiff's proof regarding their personal involvement in the acts

complained of.

Personal involvement of defendants in alleged constitutional

deprivations is a prerequisite to an award of damages under section 1983.

*Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of*

*Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,*

568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct.

1282 (1978)).  In order to prevail on a section 1983 cause of action

against an individual, a plaintiff must show some tangible connection

between the constitutional violation alleged and that particular defendant.

*See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

A supervisor cannot be liable for damages under section 1983 solely

by virtue of being a supervisor – there is no *respondeat superior* liability

under section 1983.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir.

2003); *Wright*, 21 F.3d at 501.  A supervisory official can, however, be

liable in one of several ways: 1) the supervisor may have directly participated in the challenged conduct; 2) the supervisor, after learning of the violation through a report or appeal, may have failed to remedy the wrong; 3) the supervisor may have created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) the supervisor may have been grossly negligent in managing the subordinates who caused the unlawful event; or 5) the supervisor may have failed to act on information indicating that unconstitutional acts were occurring. *Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

Plaintiff's allegations as to defendant Janicki's personal involvement in the violations alleged are plainly sufficient, for purposes of surviving defendants' motion.  According to the plaintiff Nurse Practitioner Janicki, who examined him on several occasions, acted in contravention of direct orders by Dr. Pickles, leading to his reinjuring his knee while working. These allegations sufficiently establish defendant Janicki's personal involvement in the portion of plaintiff's deliberate indifference claim relating to her failure to obey Dr. Pickles' instructions.

The allegations of Dr. Pickles' personal involvement are less clear.

22

Drawing all inferences most favorably to the plaintiff, it appears that Dr.

Pickles saw the plaintiff on January 21, 2003, and at that point knew or

reasonably should have known that his instructives from a week earlier

had not been carried out, but failed to remedy the situation or even to

inquire as to why plaintiff had not been sent to the infirmary, as he had

instructed.  Although it is indeed a close call, I recommend a finding that

these circumstances sufficiently implicate defendant Pickles' personal

involvement in the constitutional violations alleged, at least for purposes of

the pending summary judgment motion.  *E.g.*, *Woods v. Goord*, No. 01

CIV. 3255, 2002 WL 731691, at *4-*5 (S.D.N.Y. Apr. 23, 2002); *Johnson*

*v. Harris*, 479 F. Supp. 333, 335-37 (S.D.N.Y. 1979).

For purposes of their involvement in the constitutional violations

alleged, defendants Behrle and Moon stand on different footing.  Many of

the letters which plaintiff wrote to defendants Behrle and Moon, to which

they responded, were addressed to what plaintiff perceived as a delay in

his treatment.  Since I have recommended dismissal of that claim, it is not

necessary to address the sufficiency of plaintiff's allegations of their

personal involvement in the Eighth Amendment treatment delay cause of

action.

Focusing upon the other aspect of plaintiff's deliberate indifference claim, the record discloses that plaintiff did write a letter to defendant Behrle complaining of defendant Janicki's failure to place him in the infirmary and requesting that he be medically restricted from participating in prison programs. Defendant Behrle forwarded that letter to W.F. Hulihan, Deputy Superintendent for Programs, who is not a defendant in this action, for response; Deputy Superintendent Hulihan assured plaintiff that his placement in the infirmary excused him from participation in prison programs.[8] These circumstances are insufficient to inculpate defendant Behrle in the deliberate indifference claims asserted by the plaintiff. *Gates v. Goord*, No. 99 Civ. 1378, 2004 WL 1488405, at *8-*10 (S.D.N.Y. July 1, 2004); *see also Greenwaldt v. Coughlin*, No. 93 Civ. 6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr.19, 1995); *Garrido v. Coughlin*, 716 F.Supp. 98, 100 (S.D.N.Y.1989).

Despite these findings regarding personal involvement in plaintiff's Eighth Amendment claim, I am not in a position to recommend dismissal

---

[8]     In any event, even if defendant Behrle had personally addressed plaintiff's letter, defendant Behrle would not have been in a position to remedy defendants' failure to place plaintiff in the infirmary, since plaintiff's letter was dated April 7, 2003, and thus admittedly written after plaintiff had already been placed there. *See* Dkt. No. 41.

of defendants Moon and Behrle from the action altogether.  Plaintiff's

allegations are plainly sufficient to establish their personal involvement in

his First Amendment retaliation cause of action.  Moody authored a May

1, 2003 letter to defendant Behrle, complaining of defendant Moon's

alleged retaliation, to which defendant Behrle responded.  Dkt. No. 41.

These allegations suffice to establish both defendants' involvement in that

potential constitutional violation.  *See Johnson v. Wright*, 234 F.Supp.2d

352, 363-64 (S.D.N.Y. 2002).

IV.  SUMMARY AND RECOMMENDATION

Despite defendants' contention to the contrary, at a minimum the

record discloses the existence of genuine issues of material fact as to

whether the plaintiff fully complied with the requirement that he exhaust

available administrative remedies before commencing this action, and

indeed is strongly suggestive of his compliance with this requirement.

Defendants' motion for summary judgment dismissing plaintiff's complaint

on this procedural basis is therefore subject to denial.

Addressing the merits of plaintiff's claims, the record reflects the

existence of genuine issues of material fact as to whether defendants

Janicki and Pickles were deliberately indifferent to plaintiff's serious

25

medical condition, based upon their failure to remove plaintiff from the population and place him in the prison infirmary.  I find, however, that the portion of plaintiff's deliberate indifference claim which is based upon the delay in providing him with treatment for his knee condition is subject to dismissal as a matter of law.  Additionally, I find issues of fact precluding summary judgment in defendants' favor on the basis of their lack of personal involvement in the constitutional violations alleged, except as to plaintiff's Eighth Amendment claims as against defendants Moon and Behrle.

Based upon the foregoing it is therefore hereby

RECOMMENDED, that defendants' motion for summary judgment dismissing plaintiff's complaint (Dkt. No. 37) be GRANTED in part, that the portion of plaintiff's Eighth Amendment deliberate indifference claim based upon the delay in providing plaintiff with treatment of his knee condition be DISMISSED, and that both of plaintiff's Eighth Amendment claims be DISMISSED as against defendants Moon and Behrle, but that otherwise defendants' motion be DENIED in all respects.

NOTICE:  pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report-

recommendation.  Any objections shall be filed with the clerk of the court.
FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL
PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ.
P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this
report and recommendation upon the parties by regular mail.

Dated:     January 23, 2006
           Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\ISSUES\civil rights\Eighth Amendment\conditions of confinement\medicalindifference\moody.wpd

27